FILED
2011 Nov-09 PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| PERCY SAMPLE and ZACHARY COATS, )<br>)<br>) Plaintiffs, )<br>)<br>vs. )<br>)<br>TUSCALOOSA COUNTY SHERIFF )<br>EDMUND M. SEXTON, JR., )<br>)<br>Defendant. )<br>) | 7:10-cv-1163-LSC |

MEMORANDUM OF OPINION

**I. Introduction.**

Pending is Defendant Edmund M. Sexton Jr.'s motion for summary judgment (Doc. 25) as to all claims by Plaintiffs Percy Sample and Zachary Coats which survived the earlier motion to dismiss (Doc. 6). Following that motion, this Court dismissed all claims against the Tuscaloosa County Sheriff's Department and the Tuscaloosa Civil Service Board, leaving Sheriff Sexton as the sole defendant. (Doc. 12.) Still at issue are Plaintiff's claims against Sexton in his individual capacity under 42 U.S.C. §1983, as well as §1983 claims for injunctive relief against him in his official capacity, and their

claims against Sexton in his official capacity under Title VII of the Civil Rights Act of 1964 ("Title VII").[1]

In addition to ruling on the motion for summary judgment, the Court must also address the Plaintiffs' "Motion to File Out of Time" (Doc. 26) which was filed on September 26, 2011, well past the deadline for submitting a response to the summary judgment motion. While Plaintiffs were granted leave to file, the Court specifically reserved the issue of whether it would consider the untimely-filed documents. (Doc. 27 at 2.) Plaintiffs filed their late summary judgment response and evidentiary submissions on September 30, 2011 (Docs. 28-32), to which Sheriff Sexton submitted a reply on October 11, 2011 (Doc. 34). These matters have now been fully briefed and are ripe for decision.

## II. Plaintiffs' Motion for Extension of Time.

The motion for summary judgment was filed on July 21, 2011. (Doc. 25.) The three-week window for responding to that motion expired without any response from the Plaintiffs. Over six additional weeks passed before Plaintiffs filed their motion for extension of time. No justification was given for the protracted delay.

---

[1] As noted in this Court's previous Memorandum of Opinion, Plaintiffs' claims under §1981 are treated under §1983, since "§1983 constitutes the exclusive remedy against state actors for violations under §1981." (Doc. 11 at 9, n.3)(quoting *Butts v. Couty of Volusia*, 222 F. 3d 891, 893 (11th Cir. 2000)). Plaintiff's Equal Protection claims are also analyzed under §1983, since the Fourteenth Amendment does not itself provide an independent cause of action. (Doc. 11 at 9, n.4.)

The ability to refuse late submissions in response to a summary judgment motion lies within the Court's discretion. *See Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1076 (5th Cir. 1980).[2] The present circumstances—Plaintiffs' extended delay, and the absence of any reasons for it—certainly indicate that the Court would not abuse that discretion by refusing here.

Additionally, the Court cannot ignore the fact that this is not the first such incident involving Plaintiffs' counsel in this case. In *Avery v. Bibb County Correctional Facility*, No. 7:07-cv-2197, for example, in which Mr. Jones represented the plaintiff, a failure to prosecute led to a show-cause order asking why the case should not be dismissed. Mr. Jones responded with a motion for a sixty-day extension, which this Court granted. Those sixty days expired without any action on his part. After weeks of additional waiting without any activity, the Court ordered the case dismissed. Mr. Jones eventually filed a motion asking to reinstate the case, but even then waited to do so until two weeks after the Rule 59(e) deadline for such a motion had expired.

Mr. Jones' other cases before this Court have similarly been characterized by repeated delays and multiple requests for extensions, *see, e.g., Holley Jones v. Tuscaloosa County*, No. 7:08-cv-00257. This has led to other orders requiring Mr.

---

[2] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Jones to show cause why cases should not be dismissed for failure to prosecute, *see Freeman v. Meldesco/Citi Trends*, No. 7:10-cv-2942, and to actual dismissal, *see Miller v. Schmitt 21331, LLC*, No. 7:03-cv-2240. Nor has this behavior been confined to this Court; it appears that Mr. Jones has abused deadlines and been sanctioned for violating discovery orders in other courts within this district as well. *See, e.g.*, *Craig v. Alabama Power Company, Inc.*, No. 2:08-cv-02329.

The Court does not wish to punish Plaintiffs for the actions—or inactions—of their counsel, although it acknowledges that, in general, "clients are to be held accountable for the acts and omissions of their attorneys." *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 396-97 (1993)). The Court also notes that it has the discretion to allow Plaintiff's late submissions, despite their exceptional untimeliness. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir.1997); *Matia v. Carpet Transport, Inc.*, 888 F.2d 118, 119 (11th Cir.1989). Doing so is especially proper when in the interests of judicial economy, *see Thomas v. Kroger Co.*, 24 F.3d 147, 149 (11th Cir.1994).

Despite the ample justification for denying Plaintiffs' motion, the fact remains that Plaintiffs' response and evidentiary submissions have already been filed with the

Court, and are now readily available. As such, the interests of judicial economy would not be advanced by denying Plaintiffs' motion at this stage. The motion to consider Plaintiffs' untimely-filed submissions is therefore granted.[3] But while the Court grants Plaintiffs' motion, Mr. Jones is strongly warned not to presume upon the Court's leniency in the future, and is reminded that he "must not treat the goodwill of the court as a sign that, as long as counsel tries to act, he has carte blanche permission to perform when he desires." *Young*, 358 F.3d at 864.

**II. Facts.**[4]

Plaintiffs Percy Sample and Zachary Coats, both African-American men, are employed as Detention Officers with the Tuscaloosa County Jail. Coats has been employed in that capacity since June of 2000; Sample was hired in March of 2002. In September of 2005, Sample was promoted to Detention Officer Supervisor.

As Sheriff of Tuscaloosa County, Edmund M. Sexton Jr. is responsible for all hiring and promotion decisions within the Sheriff's department, including Deputy Sheriffs, as well as Detention Officers such as Plaintiffs. When an opening for a

---

[3] The Court likewise grants the subsequent motion to file additional late-filed materials (Doc. 33).

[4] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Deputy Sheriff position becomes available, all Detention Officers who have passed the Civil Service Exam—including Sample and Coats—are invited to apply for the vacancy. There are several prerequisites for the Deputy Sheriff position: in addition to passing the Civil Service Exam: applicants must undergo a background investigation, a psychological evaluation, a voice stress analysis, a firearms proficiency test, a physical agility test, as well as a personal interview with Sheriff Sexton. While a passing score on the Civil Service Exam will carry over from one application to the next, each of the other requirements must be completed anew with each subsequent application.

In the years since they were hired as Detention Officers, both Sample and Coats applied for the Deputy Sheriff position on multiple occasions. Sample's first application for Deputy Sheriff was in December of 2002. As part of the application, he answered the questions presented in an "Initial Investigative Interview Worksheet." In his answers he admitted to having bought, possessed, and sold marijuana in the past. Sample completed the same application again in August of 2005, but his answers varied greatly from those given in 2002. In his 2005 answers, he denied ever having purchased or sold marijuana. As a result of these inconsistent answers, Sample was disqualified from consideration for the Deputy Sheriff position.

Coats first applied for Deputy Sheriff in 2000, shortly after he was hired as a Detention Officer. Although he passed the physical agility test on his first attempt, he was not selected to be a deputy at that time. He applied several additional times, in 2003, 2006, 2007, and 2008. With each new application he had to reattempt the physical agility test. On each of these subsequent attempts he failed the physical agility test and was disqualified from consideration.

The last time that Sample applied was in 2005; Coats has not applied since 2008. Neither Sample or Coats was ever successful in being hired for the position. Both have had other opportunities to take part in the hiring process since those respective dates. Both have voluntarily declined those opportunities to participate.

Although Sample and Coats were not successful in their bids to become Deputy Sheriffs, other African Americans were. Since the year 2000, eighteen African-Americans have successfully been hired as Deputy Sheriffs. In the last application cycle that Sample participated in—in August of 2005—only two deputies were ultimately hired. Both were African Americans.

Neither Sample nor Coats ever discussed their concerns about being passed over for the job with anyone involved in the hiring process. At no point did either of them approach Sheriff Sexton about why they had not been hired. After Sample had

waited four years since his most recent application, and Coats over a year and a half, both filed Charges of Discrimination with the Equal Opportunity Employment Commission ("EEOC") on October 5, 2009. This action was filed on May 04, 2010.

**III. Standard.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.  **Analysis.**

Sheriff Sexton puts forward two primary reasons why summary judgment should be granted. First, he argues that the Plaintiffs' claims are all time-barred. Second, he contends that the Plaintiffs cannot, as a matter of law, support their claims. The Court will examine each of these grounds in turn.

**A. Untimeliness of Plaintiffs' Action.**

In the context of Title VII claims, "discrete discriminatory acts are not actionable if time barred." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The failure to promote or refusal to hire[5] constitutes such a discrete

---

[5] Although Plaintiffs have characterized their claim as a failure to promote, the record indicates that the position of Deputy Sheriff is an independant position rather than a promotion from the position of

discriminatory act. *See id.* at 114; *see also E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). In order to be timely, a charge of discrimination involving a discrete discriminatory act must be "filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

Although Plaintiffs have argued that "the discriminatory actions are continuing/ongoing" (Doc. 28 at 3), they have failed to allege any discriminatory acts other than the refusal to hire Plaintiffs as deputies. As noted in *Morgan*, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." 536 U.S. at 114. Here, they are easily identified as the Plaintiff's most recent unsuccessful applications. It is undisputed that Coats has not applied to be a Deputy Sheriff since January of 2008, or that Sample has not applied since August of 2005. The denial of their applications on those respective dates doubtless "should have put [them] on notice that a cause of action had accrued," *Joe's Stone Crabs*, 296 F.3d at 1272, and that they had a limited time in which to seek redress. Yet they did not file EEOC charges until October of 2009, well beyond the 180-day window. Hence, Plaintiffs' Title VII claims are time barred.

---

Detention Officer. As the relevant approach is the same for both situations, the distinction makes no difference to the Court's analysis.

Plaintiffs' remaining claims under § 1983 enjoy a more generous two-year period for filing claims, since §1983 actions in Alabama follow the two-year limitations period for torts. *See Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011). This two-year period is of no use to Sample, however, since it expired in August of 2007, long before this action was filed, and still well before the EEOC charge was made. Coats' two years, on the other hand, would have elapsed in January of 2010. The Court notes that the EEOC charge filed in October of 2009 was within this timeframe. But because it is not necessary to file an EEOC charge before instituting an action under §1983, doing so does not toll the statute of limitations. *See Smith v. McClammy*, 740 F.2d 925 (11th Cir. 1984) ("Since exhaustion of administrative remedies is not a prerequisite to filing suit, the statute would not be tolled pending pursuit of administrative remedies . . . .") The present action was not filed until May 4, 2010, roughly four months after Coats' limitation period had expired. Accordingly, all of Plaintiff's claims are time barred. Even if this were not the case, however, summary judgment would still be appropriate for the reasons given below.

    **B. Plaintiffs' Discrimination Claims**.

Discrimination claims brought under the Equal Protection Clause (via § 1983), § 1981, or Title VII "employ the same analytical framework." *Bryant v. Jones*, 575

F.3d 1281, 1296 n.20 (11th Cir. 2009). That framework requires a plaintiff to demonstrate "that, more probably than not, the employer took an adverse employment action against him on the basis of a protected personal characteristic." *Wright v. Southland Corp.*, 187 F.3d 1287, 1292 (11th Cir. 1999). A plaintiff may do so by using direct evidence of discrimination, or by using circumstantial evidence. *Id.* at 1293. Because Plaintiffs' have offered no direct evidence of discrimination, the Court will evaluate their claims using the *McDonnell Douglas* analysis.

To assist a plaintiff in demonstrating that an inherently subjective decision was nonetheless motivated by improper discrimination, *McDonnell Douglas Corp. v. Green* provides a burden-shifting paradigm designed to create a presumption of unlawful discrimination — or, at least, to provide the plaintiff objective, non-discriminatory reasons for an adverse employment action. 411 U.S. 792, 802 (1973). In the context of a failure to promote or refusal to hire case, each Plaintiff must first put forward the following four elements of a prima facie case:

> 1) [he] is a member of a protected class under Title VII;
> 2) [he] was qualified for the employment position in question; 3) [he] applied for the employment position in question and was rejected; and 4) the employment position remained open or was filled by a person outside the protected class to which the plaintiff belongs.

*Walker v. Mortham*, 158 F.3d 1177, 1180 n.2 (11th Cir. 1998). Once a prima facie case has been made out, "the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Finally, "[i]f such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Id.*

Looking first at the prima facie elements, the first and third are easily dispensed with; there is no real dispute that Sample and Coats are members of a protected class, or that they each applied for the position of Deputy Sheriff and were rejected for it. The second and fourth elements are more problematic.

The requirement that the plaintiffs be qualified for the position in question presents an obstacle to both Sample and Coats. The parties' joint expression of the undisputed facts provides unequivocally that "[b]ecause he first admitted that he sold marijuana and later denied it, *Sample was disqualified from consideration for Deputy Sheriff*." (Doc. 25 at 8.)[6] (emphasis added).

---

[6] While this quote comes from paragraph 18 of the "Statement of Undisputed Material Facts" contained in Sheriff Sexton's motion for summary judgment (Doc. 25), Plaintiffs' response to that motion provides that "Plaintiffs acknowledge and adopt" paragraphs 1-6, 9-22, and 24-27 as their own statement of the facts. (Doc. 28 at 2.)

Similarly, the parties agree that "an applicant who fails the physical agility test should not be hired." (Doc. 25 at 5.) Coats does not argue that failure to pass the physical agility test is not grounds for disqualification. Rather, the response brief states that "Plaintiff Coats cannot determine nor can the Tuscaloosa County Sheriff's Department prove nor disprove that at least two (2) physical agility tests were passed by Coats and that he was qualified to become a deputy sheriff in earlier attempts." (Doc. 28 at 2.) The two exhibits offered by Coats in support of this assertion do nothing to support it. Both are "Physical Fitness Assessment Score Sheets" prepared for Coats, one in January of 2003 (Doc. 30), the other from January of 2007 (Doc 29). Both have a checkmark in the "Failed" column for the "1 ½ Mile Run." (Doc. 29; Doc. 30.) Nor is Coats aided here by the cited section of his deposition — nowhere in it does Coats even claim to have passed a physical agility test after his initial attempt in 2000. (Doc. 25-1 at 76-83.) In the preceding sections of that same deposition, however, he does admit to having failed those subsequent attempts. (Doc. 25-1 at 37-40, 52, 66-69, 76.) Additionally, the parties have agreed in the Joint Status Report that Coats failed the test in 2008, as well as "during four earlier attempts." (Doc. 24 at 4.) Because Coats fails to even claim, let alone demonstrate, that he was qualified for the deputy position, he fails to establish the second prima facie element.

Both Sample and Coats also fail to establish the fourth element, that the sought-after position "remained open or was filled by a person outside the protected class." *Walker*, 158 F.3d at 1180 n2. The complaint alleges generally that "other similarly situated Caucasian employees of less qualification have received promotions." (Doc. 1 at 4-5.) In their Joint Status Report, however, the parties agree that neither Plaintiff can point to a single instance of this happening. (Doc. 24 at 4-5.) They have, however, agreed that eighteen African Americans have been hired as Deputy Sheriffs since 2000, many of whom, like Sample and Coats, had been employed as Detention Officers. (Doc. 24 at 3-4.) The fourth element is additionally undercut by the fact that the only two people hired when Sample was last rejected were themselves African Americans. (Doc. 25 at 9.)

Even if Plaintiffs could somehow make out a sufficient prima facie case, their already-discussed reasons for disqualification also suffice to meet Sheriff Sexton's burden in the next step of the framework. As noted in *McDonnell Douglas* itself, "participation in unlawful conduct . . . . suffices to discharge [the defendant's] burden of proof at this stage and to meet respondent's prima facie case of discrimination." 411 U.S. at 803. Sample has admitted to using marijuana "maybe 15 times" (Doc. 25-2 at 89), to buying it "3 time[s]" (*id*. at 91), and he also described a situation in which his

ex-girlfriend "found some marijuana in her car so [Sample] sold it to get rid of it."(*Id.*) Even if these illegal activities were not enough, the fact that he then changed his responses to the same questions provides an even greater "legitimate, non-discriminatory reason" for the decision not to hire Sample. Sample concedes that his evasive and inconsistent answers were the reason he was not considered. (Doc. 25 at 8.) The validity of the non-discriminatory reason given for Coats is one to which he likewise assents. "Coats agrees that it is fair for Sheriff Sexton to require an applicant for Deputy Sheriff to demonstrate his fitness to perform the job, and that an applicant who fails the physical agility test should not be hired."(Doc. 25 at 5.)

In order to prove that these proffered reasons were pretextual, the Plaintiffs would have to offer "sufficient evidence to find that the employer's asserted justification is false." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). Plaintiffs have fail to offer any such evidence. Although the Court makes every inference in the light most favorable to Plaintiffs, the Court cannot infer pretext from bare assertions regarding the Plaintiffs' feelings, or extrapolate discrimination from the mere fact that "Coats was timed a recorded by Sergeant John Barker, a Caucasian male." (Doc. 28 at 2.) As noted above, the Plaintiffs themselves have manifested assent to Sexton's nondiscriminatory reasons. Moreover, when asked directly about

any racial motivation behind his unsuccessful application, Sample stated unequivocally that he does *not* claim that Sheriff Sexton had "given preferential treatment to white applicants, yet not black applicants."(Doc. 25-2 at 21.) Thus, even if Plaintiffs could make out their prima facie case, they cannot rebut the legitimate, non-discriminatory reasons given by Sheriff Sexton.

**V. Conclusion.**

Plaintiff's claims are time-barred, as a result of their delays in filing both their EEOC charge and the present suit. Additionally, they have failed to present any direct evidence of discrimination, or any circumstantial evidence through the *McDonnell Douglas*, from which a reasonable jury could find in favor of their claims. The Court will therefore grant Defendant's motion for summary judgment as to all of Plaintiffs' claims. A separate order will be entered.

Done this 9th day of November, 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[167037]